UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,             CASE NO: 88-0079-CR-HOEVELER

    Plaintiff,

vs.

MANUEL ANTONIO NORIEGA,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S PETITION FOR WRITS OF HABEAS CORPUS, MANDAMUS, AND PROHIBITION

THIS CAUSE comes before the Court on the Defendant's Petition for Writs of Habeas Corpus, Mandamus, and Prohibition, filed July 23, 2007. This Court heard argument from counsel on August 13, 2007.

When this Court determined fifteen years ago that Defendant was a "prisoner of war" (POW), according to the Geneva Convention Relative to the Treatment of Prisoners of War, August 12, 1949, 6 U.S.T. 3316, 75 U.N.T.S. 135 ("Convention"), United States v. Noriega, 808 F. Supp. 791, 803 (S.D. Fla. 1992), it did so primarily in the context of Defendant's concerns about the care he would receive while in custody.[1] It would have been impossible to predict the full course of events which have brought the parties back before this Court, but some of those circumstances are far from surprising. For example, Defendant's allegedly illegal activities were never understood

---

[1] In an Amended Judgment signed on February 4, 1993, Docket No. 1519, the Court included its "recommendation" regarding Defendant's status as a POW with respect to his confinement.

1

by this Court to be limited to the United States, nor to Panama, and, thus, it was conceivable that an extradition request might be made at some future time. Indeed, the charges which form the basis of the extradition proceedings currently pending against Defendant, pursuant to a Complaint filed by the United States in Case No. 07-2183MC UNA, relate to alleged money laundering activities which occurred in France from 1988-89, and it may be that other countries will be interested in bringing charges against the Defendant.[2]

Despite the context of the Court's initial consideration of the POW claims,[3] once the status of POW attaches, it protects the individual POW until "final release and repatriation." Article 5, Convention. Defendant's status as a POW, however, does not change the fact that Defendant presently is incarcerated according to a valid sentence imposed by this Court. The Court's authority at this time, therefore, is properly directed toward the validity of the sentence being served, which may be challenged by reference to 28 U.S.C. § 2255,[4] or the execution of that sentence, which may be

---

[2] At the time of the invasion of Panama, $5.8 million was seized from Defendant's home in Panama City, and $20 million in 27 bank accounts was "frozen by various foreign governments at the request of the United States." United States v. Noriega, 746 F. Supp. 1541, 1542 (S. D. Fla. 1990).

[3] The Court also considered the POW issue in making an initial determination that none of the Convention's provisions divested this Court of jurisdiction over the Defendant. United States v. Noriega, 746 F. Supp. 1506, 1529 (S.D. Fla. 1990).

[4] According to 28 U.S.C. § 2255, a prisoner in custody under sentence of this Court may move "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255 is a "statutory means by which an individual under federal sentence can obtain federal habeas corpus review of the sentence imposed." United States v. Jordan, 915 F.2d 622 (11th Cir. 1990).

challenged by reference to 28 U.S.C. § 2241.[5]

Defendant has demonstrated no basis for a writ of prohibition, nor a writ of mandamus. The only remaining question is whether Defendant is entitled to a writ of habeas corpus – but first this Court must determine whether it has jurisdiction to consider this matter. As 28 U.S.C. § 2255 applies to challenges against the sentence imposed, and Defendant has not cited any defect in this Court's sentence as to this Defendant, there is no basis for the exercise of jurisdiction under this statute.[6] As the petition before the Court purports to rely on 28 U.S.C. § 2255, it therefore is subject to summary dismissal. However, in light of the circumstances presented by this case, including the fact of an imminent hearing in the extradition proceeding, and Defendant's planned release from custody in two weeks, the Court offers several observations as to the availability of habeas relief under 28 U.S.C. § 2241, in the event that Defendant seeks immediately to refile his petition before this Court under 28 U.S.C. § 2241. The Court does so with the awareness that the question of such relief is not before the Court and, thus, none of the following need be reached at this time.[7]

While 28 U.S.C. § 2241 provides the authority to issue writs of habeas corpus,

---

[5]Challenges to the execution of a sentence, rather than to the sentence itself, are to be brought as habeas petitions under 28 U.S.C. § 2241. See, e.g., Bishop v. Reno, 210 F.3d 1295, 1304 n14 (11th Cir. 2000).

[6]28 U.S.C. § 2255 provides the statutory basis for a claim by a federal prisoner that his constitutional rights were violated during his federal prosecution, including his sentencing.

[7]These observations are made for the benefit of the parties and in the interest of promoting the efficient administration of this matter.

such a writ may only issue, of course, when a petitioner demonstrates entitlement to that relief; if the question were before this Court at this time, the Court would find that Defendant has demonstrated no such entitlement, as described below.

Defendant asserts that his POW status under the Convention shields him from extradition at this time, citing Article 118 of the Convention, which provides that POWs "shall be released and repatriated without delay after the cessation of active hostilities."[8]  In response, the United States argues that extradition to France on the announced charges is consistent with the Convention because of Article 82, which subjects Defendant, as a POW, to the "laws, regulations and orders" of the United States.[9]  The United States also relies on Article 12 of the Convention, regarding the transfer of POWs, as supporting the principle that repatriation is not automatic, but rather that transfer is permitted under certain circumstances.[10]

While the Convention at issue is silent as to extradition, it is notable that one of the other conventions adopted on that same date specifically provides that its protections for civilians (as compared to the Convention's protections for POWs) do not

---

[8]Defendant also argues that only allies in a particular conflict are entitled to seek extradition of POWs detained during that conflict.  The Court finds no such requirement in the Convention or in any other cited source of authority.

[9]"A prisoner of war shall be subject to the laws, regulations and orders in force in the armed forces of the Detaining Power, the Detaining Power shall be justified in taking judicial or disciplinary measures in respect of any offence committed by a prisoner of war against such laws, regulations or orders."  Art. 82, Convention.

[10]Article 12 provides, in pertinent part, that POWs "may only be transferred by the Detaining Power to a Power which is a party to the Convention and after the Detaining Power has satisfied itself of the willingness and ability of such transferee Power to apply the Convention."

constitute an obstacle "to the extradition, in pursuance of extradition treaties concluded before the outbreak of hostilities, of protected persons accused of offences against ordinary criminal law." Geneva Convention IV Relative to the Protection of Civilian Persons in Time of War art. 45, 12 August 1949, 6 U.S.T. 3516 ("Fourth Geneva"). Moreover, the oft-cited Commentary notes that the term "transfer" as used in this Article may mean "internment in the territory of another Power, repatriation, the returning of protected persons to their country of residence **or their extradition**." International Committee of the Red Cross, Commentary on the Geneva Conventions (J. Pictet, ed., 1960) ("Commentary") (emphasis added). While the purposes of the Fourth Convention are different from those of the Third, it is nevertheless compelling that the convening parties expressed an understanding of the term "transfer" which included extradition.[11] Article 45 of the convention protecting civilians parallels Article 12 of the convention protecting POWs, and it is not unreasonable to include that Article 12 embodies the same principles – i.e., that transfer of either POWs or "protected persons" is permitted, but that it should only take place between parties to the Conventions to guarantee that the principles embraced in the Conventions will be

---

[11]The Court does not find compelling the argument that extradition of POWs is prohibited because there is no mention of extradition in the Convention, particularly when the Commentary to the Fourth Convention indicates clearly that extradition is included within the definition of "transfer." In other words, the maxim of statutory interpretation, *expressio unius est exclusio alterius*, need not compel a different result. Indeed, it would be absurd to suggest that a civilian facing the identical criminal charges, i.e., money laundering in connection with drug trafficking, would be subject to extradition when a POW would not – particularly when the charges have no relation whatsoever to the POW's status as a member of the armed forces of his or her home country.

respected.[12]

This Court previously determined that Article 118 of the Convention is limited by Article 119.[13] Article 119 provides that POWS "against whom criminal proceedings for an indictable offence are pending may be detained until the end of such proceedings, and, if necessary, until the completion of the punishment." That provision also applies to POWs "already convicted for an indictable offence." Article 119, Convention. As previously noted by this Court, "[s]ince criminal proceedings are pending against Noriega, Article 119 permits his detainment in the United States notwithstanding the cessation of hostilities." United States v. Noriega, 746 F. Supp. 1506, 1528 (S.D. Fla. 1990).

---

[12]The Commentary to that Article also states that the Fourth Convention:

> was not the place to settle in detail the conditions on which extradition was to take place or the method of carrying it out; such cases must be decided in accordance with the laws and treaties in force. It was nevertheless important to preserve the existing character of extradition as an act of penal procedure and to prevent it serving as a pretext for persecution. The Diplomatic Conference wished to exclude any extradition treaty concluded, for instance, under pressure from a victorious Power. It therefore stipulated expressly that the treaties referred to were those 'concluded before the outbreak of hostilities.

Commentary, Article 45, Fourth Convention. The Court notes that our extradition treaty with France dates to at least 1909, 37 Stat. 1526. Valentine v. United States, 299 U.S. 5 (1939).

[13]Although Article 118 of the Convention provides that POWs "shall be released and repatriated without delay after the cessation of active hostilities," repatriation is not automatic; for example, a POW may refuse to be repatriated and, as noted above, POWs facing criminal prosecution may be detained. Neither is extradition automatic. Procedures established in 18 U.S.C. § 3184 govern the processing of the extradition request, and this Court has full confidence in Magistrate Judge Turnoff's ability to address all relevant issues and to see that the United States abides by all governing treaties and laws, including the Convention.

>This Court stated:
>
>>[t]he humanitarian character of the Convention cannot be overemphasized, and weighs heavily against Defendants' [including the co-Defendants] applications to the Court. The Third Geneva Convention was enacted for the express purpose of protecting prisoners of war from abuse after capture by a detaining power. The essential principle of *tendance liberale*, pervasive throughout the Convention, promotes lenient treatment of prisoners of war on the basis that, not being a national of the detaining power, they are not bound to it by any duty of allegiance. Hence, the 'honorable motives' which may have prompted his offending act must be recognized. That such motives are consistent with the conduct and laws of war is implicit in the principle. Here, the Government seeks to prosecute Defendants for alleged narcotics trafficking and other drug-related offenses – activities which have no bearing on the conduct of battle or the defense of country. The fact that such alleged conduct is by nature wholly devoid of 'honorable motives' renders *tendance liberale* inapposite to the case at bar.

Id. at 1529. Clearly, the facts surrounding this particular Defendant's status as a POW are far different from those expressly considered by the parties to the Convention in 1949.

Defendant is seeking repatriation for a multitude of reasons, not the least of which appears to be that he will be shielded constitutionally from extradition to France once he returns to Panama. According to the United States' prior filings in this case:

>it is our understanding that Article 24 of the Panamanian Political Constitution of 1983 (like Article 23 of the predecessor Political Constitution of 1972) as well as Panamanian statutory law (Article 2508(1) of the Panamanian Criminal Procedure Code; Article 30(1) of Law No. 23 of December 20, 1986, governing the extradition of persons charged with drug-related offenses) do not permit the use of the extradition process to surrender Panamanian nationals to foreign countries.

Declaration of Mary Ellen Warlow, Associate Director of the Office of International Affairs, Criminal Division, Department of Justice, April 4, 1988, Docket No. 40. The United States has confirmed recently that the Defendant would not be able to be

7

extradited if he is repatriated.[14] Defendant has not always insisted on repatriation; indeed, at one time Defendant himself cited Article 12, and sought removal to a third country.[15]

The Court previously noted the clear conclusion that Article 12 "limits the ability of the United States to effect such a transfer" by requiring that the receiving country be a party to the Convention and willing to apply the Convention. Noriega, 746 F. Supp. at 1527. No other restrictions are provided. Defendant has offered no evidence suggesting that France will fail to abide by the Convention in its treatment of Defendant.[16] According to the United States, Defendant already has been convicted in France on criminal charges, and nothing in the Convention suggests that honoring a treaty between parties to the Convention concerning extradition for a criminal offense is prohibited. As consistently stated by the Eleventh Circuit, "extradition is a function of

---

[14]During argument, defense counsel stated that he "didn't know" whether that was the case, but the Court accepts the United States' representation.

[15]Defendant "hereby invokes Part II, **Article 12** and demands that the United States of America transfer him out of their custody to the custody of a willing third country who is a High Contracting Party so that this willing country may have the responsibility of applying each section and article of Geneva Convention III." Ex-Parte Demand to be Transferred to a Neutral Third Party Country, Docket No. 185 (emphasis in original), p 17. Defendant's demand that he be "immediately interred in a third country willing to accept him from which he may be repatriated or released," id. at 25, presents the question of what would be the situation if that request had been granted and Defendant had been sent to France. It seems plausible that while France was detaining him, France also could have proceeded with criminal charges against him and, thus, he would be facing those charges in any event.

[16]It is clear that France is a party to the Convention and the United States has represented that France will apply the protections of the Convention during the detention and prosecution of the Defendant.

8

the Executive." Kastnerova v. United States, 365 F.3d 980, 986 (11th Cir. 2004). This Court has a constitutional mandate to follow treaties.[17] The United States has elected to pursue the extradition of Defendant to France, rather than his repatriation to Panama, despite a pending claim from Panama for the return of Defendant. It is unclear whether Panama is actively seeking Defendant's return, but in any event, any competing claims for Defendant's extradition are matters for the Secretary of State to resolve.

Because both parties have raised the issue, the Court comments briefly on the argument that the Military Commissions Act of 2006, Pub. L. No. 109-366, § 5(a), Oct. 17, 2006, 120 Stat. 2631 ("Act"), denies Defendant the ability to raise the Convention in a habeas (or any civil) proceeding.[18] This Court's reading of § 5(a) of the Act is that it attempts to remove entirely the protections of the Convention from any person, even a citizen of the United States, in any American courtroom whenever the United States is involved. Clearly, § 5(a) raises concerns, but those are left for another day and

---

[17] "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." Article III, Section 2, Constitution.

[18] It appears that § 5(a) does not strip a defendant in a federal criminal proceeding such as the present proceeding from his or her rights under the Geneva Convention – unless, of course, the clause "or other civil action or proceeding" is to imply any other type of proceeding, instead of just any other civil proceeding. In § 948b(g) of the Act, Congress expressly limited an "alien unlawful enemy combatant" from invoking the Geneva Convention during a trial by a military commission, but apparently has retained the ability of others to raise the Convention during criminal proceedings in a court. Congress did not adopt the broader language which had been proposed by Senator Frist, which would have eliminated the ability of all persons (including our own soldiers, presumably) to invoke the rights of the Convention in **any** proceeding in an American Court. S. 3861, 109th Cong. § 6(b)(1) (2006).

9

another Court – indeed, it appears that the Supreme Court soon will address such issues.

This case is temptingly unique – presenting a plethora of issues, each of which could lead to volumes of analysis, but most of which are not necessary to the Court's decision today.  Simply stated, this Court's role at this stage of the proceedings is limited.  The temptations here are to expansively comment on the importance of respect for the Convention, particularly those provisions relating to treatment of POWs, yet that is not in dispute, according to the United States.[19]  Indeed, the United States assures this Court that the Defendant's POW status remains respected and will continue to be respected even after extradition to France.  There is also a temptation to reach the issue of the constitutionality of the Military Commissions Act of 2006, particularly § 5(a) which purports to affect changes to the protections of the Convention – but that argument is only raised in the alternative by the United States and it would be imprudent for this Court to reach that issue at this time.

In conclusion, the Court notes again that "[i]n order to set the proper example and avoid diminishing the trust and respect of other nations," the United States must honor fully its obligations according to the Convention.  Respect is earned by being fair and just in the administration of the law.  The Defendant, who, according to the United

---

[19]The United States, for example, has informed the International Committee of the Red Cross regarding the French extradition request, as required by Article 104 of the Convention.  United States' Supplemental Reply, Docket No. 1708, p. 2.

States, is 69 years old,[20] a grandfather, and apparently far removed from his prior criminal activities, was convicted as to a number of extremely serious crimes in this country and has been charged elsewhere with serious crimes. Thus, his present appearances notwithstanding, a strict adherence to the terms of the Convention, both as to the letter and the spirit of the Convention, does not mandate immediate repatriation but rather supports a decision that Defendant must face those charges which are legitimately brought against him by other parties to the Convention, so long as our international obligations under the Convention are being met. Based upon the circumstances and arguments presented by the parties, it appears that in this specific instance examined today as to this very unique Defendant, the United States is doing so.[21]

This Court never intended for the proclamation of Defendant as a POW to shield him from all future prosecutions for serious crimes he is alleged to have committed. That being said, even the most vile offender is entitled to the same protections as those owed to a law-abiding soldier once they have been declared a POW. It appears that the extradition proceedings should proceed uninterrupted.[22]

---

[20]The United States reports that Defendant's date of birth is February 11, 1938. Complaint, Case No. 07-21830, p. 4.

[21]The decision today is also consistent with Articles 5 and 85 of the Convention, as the United States has represented that Defendant will retain his rights as a POW while in France's custody, i.e., presumably through final repatriation.

[22]To the extent that Defendant is unhappy with the outcome of those proceedings, "[a] petition for writ of habeas corpus is a proper method to contest an extradition order because there is no direct appeal in extradition proceedings." Afanasjev. Hurlburt, 418 F.3d 1159, 1163 (11th Cir. 2005), citing Kastnerova.

Based upon the above, it is

ORDERED AND ADJUDGED that the Defendant's Petition is denied, without prejudice to renew as appropriate in relation to the extradition proceedings themselves.

DONE AND ORDERED in chambers in Miami, Florida, this 24th day of August, 2007.

WILLIAM M. HOEVELER
Senior United States District Judge

Copies to:
Michael P. Sullivan, AUSA
Sean Paul Cronin
Frank A. Rubino
Jon May